Claradean Nesby TAYLOR et al *v.*
EDOE, INC., A Corporation et al

78-168                                    574 S.W. 2d 894

Opinion delivered December 18, 1978
(Division II)
[Rehearing denied January 22, 1979.]

*George Van Hook, Jr.,* for appellants.

*David Solomon,* for appellees.

DARRELL HICKMAN, Justice. Edoe, Inc., a family-held corporation and Abe J. Davidson, trustee, appellees, filed suit in Phillips County Chancery Court to obtain a judgment on ten promissory notes signed by Claradean Nesby Taylor, the appellant, and to foreclose a deed of trust she signed on about 99 acres of land she owned in Phillips County.

Mrs. Taylor filed an answer to the complaint and a cross-complaint against Abe Davidson, essentially alleging that Mrs. Taylor lacked legal capacity to execute the notes and the deed of trust. The cross-complaint sought an accounting of Davidson, who had provided Mrs. Taylor funds and goods over a period of years, for all his financial dealings with Mrs. Taylor. Before trial, Titus Taylor filed a petition to intervene saying he was Mrs. Taylor's court-appointed guardian. (Although there is no evidence in the record, it was not disputed that Taylor had been appointed guardian in 1971.) The intervention was apparently permitted and an identical answer and cross-complaint was filed by him as had been filed on behalf of Mrs. Taylor. Davidson promptly answered the first cross-complaint but did not file an answer to the second one.

The chancellor granted judgment to Edoe for $67,-302.35, plus a $5,000.00 attorney's fee and denied any relief to the appellant. The appellant has also failed to convince us on appeal of any merit to her case.

The appellant's chief argument is that Mrs. Taylor lacked legal capacity to sign the notes and deed of trust in question.

It was not disputed that Mrs. Taylor was committed to the Arkansas State Hospital in 1962 and 1963 by court order for nervous disorders, and that there was no certification of discharge filed either time as required by Ark. Stat. Ann. § 59-235 (Repl. 1947). [Pertinent provisions of that statute are now contained in Ark. Stat. Ann. § 59-409 (Repl. 1971).] It was also undisputed that Mrs. Taylor was released from the hospital each time after a period of a few months.

In 1963, the Probate Court of Phillips County, in guardianship proceedings, approved the execution of a mortgage to Abe Davidson by Mrs. Taylor's guardian to secure an indebtedness to him of $21,582.66. On July 27, 1964, the guardianship was terminated, and Claradean Nesby Taylor was adjudicated to be legally competent in that proceeding. The evidence indicated that in 1969, ten new promissory notes were executed to Abe Davidson, together with a deed of trust on the same land. The underlying obligation for the notes was for merchandise received; cash advances for payment of insurance, taxes and other bills; refinancing of the original $21,582.66 debt; and, 10% interest. It is these ten notes which were later assigned to the Davidson family corporation, Edoe, that were the subject of the judgment of the trial court.

Since there was no record that she had ever been declared competent after her release on both occasions from the Arkansas State Hospital, the appellant argues that she was legally incompetent when the instruments were signed in 1969. The appellant cites Ark. Stat. Ann. § 59-235 (Repl. 1947) as authority, which states in part:

> . . . When a patient has been committed to the State Hospital, or who has been adjudged incompetent by a Probate Court, for the purpose of guardianship, and later been discharged by the Superintendent after having recovered mentally, the Superintendent shall certify this fact to the Probate Court of the county in which the patient resides, and upon receipt of this certificate the Court shall issue an order removing his disability and restoring him to his normal legal status.

The appellant offered certain oral testimony regarding her mental condition. Her brother-in-law, Otis Williams, testified that sometimes she acted normal but if she was upset she was "bad", and "she didn't seem like she had good sense." Mrs. Reilly McKissic said she had been nervous since 1963 and was prone to get hysterical. Pearlie Nesby Williams, a sister of Mrs. Taylor's, said that since 1963 she had frequent nervous breakdowns. Her nineteen year old daughter said her mother was easily upset and at times would react physically. Her husband testified that she was "crazy."

There was no medical testimony offered, nor was the guardian appointed for her in 1963 called to testify. Her brother-in-law, Otis Williams, admitted that at times Mrs. Taylor was normal except when she got upset. Mrs. McKissic said that when she was not doing well she would see her two or three times a week; when she was doing all right she would see her every week or so. None of the witnesses testified regarding her mental state on March 13, 1969, the day the notes and mortgage were executed.

Of course it is the burden of one challenging mental capacity to prove it. *Simmons First Nat'l. Bank* v. *Luzader,* 246 Ark. 302, 438 S.W. 2d 25 (1969). The fact that Mrs. Taylor was adjudicated insane is merely *prima facie* evidence of incapacity which may be rebutted. *Brown* v. *State,* 219 Ark. 647, 243 S.W. 2d 938 (1951). Also, there is a presumption that when one is discharged from the State Hospital any presumption that may be attendant to one's hospitalization or commitment to the State Hospital is nullified. See *Feild* v. *Koonce,* 178 Ark. 862, 12 S.W. 2d 772 (1929); *Federal Land Bank of St. Louis* v. *Lewis,* 199 Ark. 120, 132 S.W. 2d 810 (1939).

Therefore, the presumption of insanity due to the 1962 and 1963 commitments is rebutted by the fact that Mrs. Taylor was released from the hospital, even though that fact was never certified to the probate court.

Consequently, appellant bore the same burden that he would have borne had there been no adjudication of mental incompetency. There is a presumption of competency; to overcome this presumption, it was necessary for appellant to show that Mrs. Taylor lacked the mental capacity to execute the instrument in question at the time of execution. *Simmons First Nat'l. Bank* v. *Luzader, supra.*

The test of mental capacity is whether one possesses sufficient mental capacity to retain in the memory, without prompting, the extent and condition of one's property and to comprehend how one is disposing of it and to whom. *Pledger* v. *Birkhead,* 156 Ark. 443, 246 S.W. 510 (1923). The chancellor found that the appellant had failed to meet his burden of proof regarding mental capacity.

We have carefully reviewed the evidence in this case and we cannot say that the chancellor's finding regarding mental capacity is clearly against the preponderance of the evidence. Although Mrs. Taylor had been in and out of the State Hospital and had nervous problems, we cannot point to any evidence that clearly shows she was incapable at the time of execution of knowing about her property and being able to deal with it.

The appellant also argues that the chancellor erred in not ordering an accounting since a fiduciary relationship existed between Mrs. Taylor and Davidson. This argument assumes the existence of such a relationship. However, there is no evidence in the record to establish a fiduciary relationship between the parties and we cannot say the chancellor's refusal to order an accounting was clearly incorrect.

The appellant also argues on appeal that since the court found a failure of consideration, then judgment should not have been entered for the amount sought. Abe Davidson testified (and his records left a lot to be desired) that most of his original records were destroyed in a tornado before 1965. He recited credits that he had given the Taylors down through the years, as well as advances since 1968. In a memorandum to counsel, the chancellor stated that there may have been a partial failure of consideration and that the guardian may be entitled to a credit.

The attorney for the guardian was told he would be given an opportunity to present to the court any figures warranting a credit before judgment was entered. A year and a half later, with no evidence that any figure was submitted to the court, judgment was entered for the amount asked for by the appellees. This matter should have been taken care of at the trial level within the time allotted by the court, which was generous.

The appellant also argues since Davidson was in default on the second counterclaim filed by the guardian on behalf of Mrs. Taylor, the court should, as a matter of course, order an accounting by Davidson. The trial court ruled that there was no default since Davidson had answered the first answer and

cross-complaint filed which was identical in all respects to the second one and, therefore, there was no default. We agree with the chancellor's decision in this regard.

Affirmed.

We agree. HARRIS, C.J., and FOGLEMAN and BYRD, JJ.